## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DESIREE TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No. |
| v. | ) | 1:24-CV-02139-SEG-JCF |
| | ) | |
| BOARD OF REGENTS OF THE | ) | JURY TRIAL DEMANDED |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA by and on behalf of | ) | |
| GEORGIA INSTITUTE OF | ) | |
| TECHNOLOGY, and DAMON P. | ) | |
| WILLIAMS, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

### JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Plaintiff Desiree Turner ("Plaintiff"), and Board of Regents of the

University System of Georgia by and on behalf of its unit institution, the Georgia

Institute of Technology ("USG"), and Damon P. Williams ("Williams"), in his

official and individual capacities (collectively, the "Defendants"), will be

submitting their Joint Preliminary Report and Discovery Plan, pursuant to N.D.

Ga. Local Rule 16.2.

1.    **Description Of Case:**

(a)    **Describe briefly the nature of this action.**

Plaintiff brings the above-captioned case pursuant to: Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for sex discrimination, retaliation, and hostile work environment; the Georgia Fair Employment Practices Act of 1978, as amended, O.C.G.A. § 45-19-20, et seq., for sex discrimination and retaliation; and under 42 U.S.C § 1983 against Williams.

**(b)    Summarize, in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence.**

**Plaintiff's Response**:

Plaintiff began her employment with Georgia Tech on June 1, 2022, as the Associate Director for the Women in Engineering (WIE) program within the College of Engineering. In October 2022, Plaintiff approached her supervisor, Dr. Damon P. Williams, regarding the vacant WIE Director role, which she was encouraged by Williams to consider. Williams indicated that the position's doctoral requirement had been changed from "required" to "preferred," which Plaintiff found encouraging as she did not hold a doctorate. During the selection process, Plaintiff was told by Williams that, even though she was encouraged to apply, she was ultimately not selected for the role. He later offered to coach and mentor her without providing specific guidance for improvement.

ams that, even though she was encouraged to apply, she was ultimately not selected for the role. He later offered to coach and mentor her without providing

specific guidance for improvement.

In her interactions with Williams, Plaintiff experienced several incidents that left her feeling uncomfortable. Williams made personal comments about her appearance, such as her skin tone and makeup, and, on one occasion, asked her to prepare a plate of food for him, which she perceived as demeaning. At various points, Williams asked Plaintiff to perform tasks that she felt were outside her job responsibilities, such as taking notes in meetings. Plaintiff found some of these requests inappropriate, as they appeared to be focused on her rather than her professional qualifications.

appeared to be focused on her rather than her professional qualifications.

Plaintiff observed that her interactions with Williams became increasingly uncomfortable due to his continued focus on her physical appearance and personal life. These comments, along with his behavior during meetings, left her feeling uneasy in her work environment.

**Defendant's Response:**

Without waiving any defenses asserted in the Answer, Defendants submits the following:

Plaintiff was hired as an Educational Outreach Manager within the College of Engineering's Women in Engineering ("WIE") Office at the Georgia Institute of

Technology ("GT") in June 2022. At the time of hire, Plaintiff's direct supervisor was Dr. Christine Valle, the Director of WIE. In September 2022, Defendant Dr. Damon Williams ("Williams") was promoted to Associate Dean on Inclusive Excellence within the College of Engineering. This position oversaw the WIE and the Director of WIE reported to Williams. Within the same month Williams was promoted, Valle informed Williams that she would resign and take early retirement effective December 31, 2022. The Human Resources Department began their search for a candidate and was responsible for filtering out the applicants who did not meet the minimum requirements. One such requirement for this position was a Doctor of Philosophy (Ph.D).

Plaintiff and Williams met several times throughout the course of their employment together. On or about October 24, 2022 they discussed plans for Valle's departure and the additional WIE program duties they would split during the search for a new Associate Director. During this meeting, Williams asked Plaintiff if she planned on applying for the Associate Director position. Plaintiff responded affirmatively. Williams informed her the position usually required a Ph.D., but told Plaintiff he would ask HR if the degree requirement was something they ever waived for the position. At no point did Williams promise her the position during this meeting, nor did he state that he would change the requirement

for a Ph.D. unilaterally. During this meeting Williams also asked if Plaintiff would like professional development and mentorship from Williams and Plaintiff responded positively. They scheduled a follow-up meeting on November 8, 2022. During this time Plaintiff performed interim duties that reflected the duties an Associate Director would have and Williams requested HR increase her salary to reflect the additional work. Plaintiff received supplemental pay from January 1, 2023 through August 31, 2023.

The parties next met on November 8, 2022. Sometime before this meeting, HR informed Williams that the Associate Director position required a Ph.D. and they would not waive the requirement. Williams informed Plaintiff that it required a Ph.D. at this meeting and that he had no authority to waive the requirement. Williams further informed Plaintiff that if she was not applying for the role, then she was eligible to sit on the search committee to select the Associate Director. Plaintiff was upset the role required a Ph.D., but applied anyway. During this meeting Williams encouraged her to apply for Ph.D. programs to advance her career generally. On November 10, 2022, Plaintiff applied for the Associate Director position online. In her application, she incorrectly labelled her current job title. HR did not select her application to move forward to the search committee because she did not meet the minimum qualifications.

Plaintiff and Williams attended a meeting with other employees of Georgia Tech on December 1, 2022. At this meeting, Williams noticed Plaintiff looked pale and asked if she was sick. He informed Plaintiff he was worried she had COVID and that if she was sick she needed to go home. Plaintiff told Williams she wasn't wearing makeup. Later during this meeting, Williams worked on an important email to a program donor when someone announced there were sandwiches outside the meeting room. As he was focused on this email, he asked if Plaintiff would mind grabbing a sandwich since everyone was getting up to get one. She brought it to him. At the end of the meeting, Williams asked others, including Plaintiff, if he could get them any food in return.

After this meeting, Plaintiff and Williams met one on one to discuss Williams' concerns with Plaintiff's application for the Associate Director position and to further offer advice on her career trajectory as her mentor. Williams informed her that the committee would not be considering her application because her application (and others) did not meet the minimum requirements. Plaintiff was surprised she did not get the position. Williams took this time to educate Plaintiff on a number other areas in her career he felt she could improve as her mentor, including dressing professionally, having an appropriate headshot that matched other employees at GT, and expanding her career in Ph.D. programs.

The parties met again on December 7, 2022 and Plaintiff informed Williams that someone close to her had died. Williams offered his services as a pastor and mentor if she needed someone to reach out to. On December 15, 2022, the parties met with a potential donor over videoconference and Williams asked Plaintiff if she could sit next to him so they could both be seen as a united front on the camera. After this meeting, they went to a holiday lunch with several other employees and the discussion turned to working from home. Plaintiff mentioned in front of several employees that she often did work while lying in bed. Sometime later Williams referenced this when he asked her to get something done while lying in her bed at home.

On January 6, 2023, Plaintiff and Williams met in person. Plaintiff had requested this meeting to discuss several areas she wanted to work on in the WIE program. Williams had a preference for meetings in person and would often tell other employees that information. During this meeting, Williams suggested to Plaintiff a matching algorithm for internship programs in their undergraduate engineering department. Plaintiff did not know what Williams was referring to, so as an example mentioned that it would look like the popular dating app "Tinder," but for students to match with internship programs. As part of his mentorship, the discussion turned to Williams's assertion that African-American employees have

to dress and present themselves at a higher standard than their Caucasian counterparts to be taken seriously in a professional setting. He offered to have his wife, a professor at Emory University, get in touch with Plaintiff for advice about dressing professionally as a woman. They further discussed different working styles as part of their mentor/mentee relationship. This was their last one-on-one interaction.

At no point did Plaintiff express her discomfort to Williams about any statement or action he allegedly made during their employment together. However, on January 18, 2023, Plaintiff filed a Title IX complaint against Williams alleging he sexually harassed her by making unwanted comments about her appearance, looking at her suggestively on one occasion, and requesting she perform tasks unrelated to her position. After a lengthy two-day hearing, GT Title IX Investigator Holly McDaniel found that Williams had ***not*** violated Title IX or GT's sexual harassment policy. Plaintiff filed suit on May 15, 2024.

Defendants deny that they have unlawfully discriminated or retaliated against Plaintiff.  All actions taken by Defendants with respect to Plaintiff's employment were taken for legitimate, non-discriminatory, non-retaliatory business reasons.  Plaintiff has not been deprived of any rights, privileges or immunities secured under the laws of the United States or the State of Georgia.

**(c) The legal issues to be tried are as follows:**

**Plaintiff:**

COUNT I: GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OFTHE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII"), as to Defendant Georgia Tech

COUNT II: GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF THE GACODE, ARTICLE 2-FAIR EMPLOYMENT PRACTICES § 45-19-2

COUNT III: RETALIATION IN VIOLATION OF TITLE VII as to Defendant Georgia Tech

COUNT IV: RETALIATION IN VIOLATION OF THE GA CODE, ARTICLE 2-FAIREMPLOYMENT PRACTICES § 45-19-29

COUNT V: HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII as to Defendant Georgia Tech

COUNT VI: VIOLATION OF 42 U.S.C.1983 as to Defendant Williams (Sexual/Gender Harassment)

**Defendant:**

Without waiving any defenses asserted in its Answer and Defenses,

Defendant submits the following:

> (1) Whether Plaintiff can establish a claim for sex discrimination in violation of Title VII.

> (2) Whether Plaintiff can establish a claim for retaliation in violation of Title VII.

(3)     Whether Plaintiff can establish a claim for hostile work environment in violation of Title VII.

(4)     Whether Plaintiff can establish a claim for sex discrimination in violation of FEPA.

(5)     Whether Plaintiff an establish a claim for retaliation in violation of FEPA.

(6)     Whether Plaintiff can establish a claim against Williams in his official or individual capacity.

(7)     Whether Defendants articulated legitimate, non-retaliatory reasons for the challenged actions.

(8)     Whether Plaintiff can prove by a preponderance of the evidence that the Defendants' articulated reasons for the challenged actions are a pretext for retaliation.

(9)     What, if any, damages Plaintiff is entitled to recover.

(d)    **The cases listed below (include both style and action number) are:**

(1)    **Pending Related Cases:**

None.

(2)    **Previously Adjudicated Related Cases:**

None.

**2.    <u>This case is complex because it possesses one (1) or more of the</u>**

**<u>features listed below (please check)</u>:**

     \_\_\_\_\_     **(1)    Unusually large number of parties.**

     \_\_\_\_\_     **(2)    Unusually large number of claims or defenses.**

     \_\_\_\_\_     **(3)    Factual issues are exceptionally complex.**

     \_\_\_\_\_     **(4)    Greater than normal volume of evidence.**

     \_\_\_\_\_     **(5)    Extended discovery period is needed.**

     \_\_\_\_\_     **(6)    Problems locating or preserving evidence.**

     \_\_\_\_\_     **(7)    Pending parallel investigations or action by**

                       **government.**

     \_\_\_\_\_     **(8)    Multiple use of experts.**

     \_\_\_\_\_     **(9)    Need for discovery outside United States**

                       **boundaries.**

     \_\_\_\_\_     **(10)   Existence of highly technical issues and proof.**

     \_\_\_\_\_     **(11)   Unusually complex discovery of electronically**

                       **stored information.**

The parties do not contend that this case is complex.

**3.    <u>Counsel</u>:**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

            **Plaintiff:**

> Carla Aikens
> Carla D. Aikens, P.L.C.
> 615 Griswold Street, Suite 709
> Detroit, Michigan 48226
> carla@aikenslawfirm.com
> (844)835-2993

            **Defendant:**

> Allison Whitfield
> Assistant Attorney General
> Georgia Bar No. 356119
> Department of Law, State of Georgia
> 40 Capitol Square, S.W.
> Atlanta, Georgia 30334-1300
> Phone No.: 470-866-5340
> Email: awhitfield@law.ga.gov

**4.**   <u>**Jurisdiction**</u>**:**

**Is there any question regarding this Court's jurisdiction?**

      **__ Yes**          <u>**X  No**</u>

**If "Yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection.  When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

5.    <u>Parties To This Action</u>:

(a)    **The following persons are necessary parties who have not been joined:**

None.

(b)    **The following persons are improperly joined as parties:**

None.

(c)    **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

None.

(d) **The parties shall have the continuing duty to inform the Court of any intentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

6.    <u>Amendments To The Pleadings</u>:

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Rule 15, Federal Rules of Civil Procedure.  Further instructions regarding amendments are contained in LR 15.**

(a)     **List separately any amendments to the pleadings which the parties anticipate will be necessary:**

None.

(b)     **Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the preliminary planning report is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

7.     **Filing Times For Motions:**

**All motions should be filed as soon as possible.  The Local Rules set specific filing limits for some motions.  These times are restated below.**

**All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior permission of the Court to file later.  Local Rule 7.1A(2).**

(a)     **Motions to Compel:**  before the close of discovery or within the extension period allowed in some instances. Local Rules 37.1.

(b)     **Summary Judgment Motions:**  within thirty (30) days after the close of discovery, unless otherwise permitted by Court order.  Local Rule 56.1.

(c)     **Other Limited Motions:**  refer to Local Rules 7.2, 7.2B, and

**7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions and motions for consideration.**

    **(d)**    **Motions Objecting to Expert Testimony**:  **Daubert motions with regard to expert testimony no later than date that the proposed pretrial order is submitted.**

**8.   Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the part and the basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).**

The parties do not object to serving initial disclosures.

**9.   Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the positions of each party.**

The parties do not request a scheduling conference at this time.

**10.   Discovery Period:**

**The discovery period commences thirty (30) days after the appearance of**

the first Defendant by answer to the complaint.  As stated in Local Rule 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three (3) discovery tracks:  (a) zero (0)-months discovery period; (b) four (4)-months discovery period; and (c) eight (8)-months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

Plaintiff:

Plaintiff intends to conduct discovery to gather information supporting her claims and addressing the Defendants' defenses. Specifically, Plaintiff plans to depose key witnesses who are likely to have relevant knowledge regarding the events and circumstances of the case. This includes individuals with direct knowledge of the facts central to Plaintiff's claims. In addition, Plaintiff intends to depose a corporate representative from the Defendant(s) to obtain information about corporate policies, decisions, and other matters that may be critical to the claims. Plaintiff will also engage in written discovery, including interrogatories, requests for production of

documents, and requests for admission, aimed at uncovering the factual basis of Plaintiff's claims, Defendants' defenses, and Plaintiff's claimed damages.

**Defendant:**

Discovery will be needed as to the factual basis of Plaintiff's claims, Defendants' defenses, Plaintiff's claimed damages, Plaintiff's efforts to mitigate her claimed damages, and all other discoverable information bearing on her claims in this case. Plaintiff and Defendants expressly reserve any and all objections to discovery.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The parties do not anticipate that additional time beyond the assigned discovery track will be necessary. Although none of the above issues of complexity apply in this case, the Defendants anticipate that discovery may lead to information or documents which contain personal information of employees as well as potentially of students. Accordingly, the Defendants intend to discuss with Plaintiff, and hopes to file a Consent Motion for Protective Order. Defendants also anticipate that additional time may be

required to allow for review of discovery by counsel for Defendants. The parties will notify the Court if unanticipated events occur that justify an extension of the discovery period.

**11.    Discovery Limitation and Discovery of Electronically Stored Information:**

**(a)    What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed.**

Pursuant to Fed. R. Civ. P. 5(b)(2)(e), the Defendants would like to consent to service by electronic means with respect to discovery requests and responses, in which event such service is complete upon transmission. The Defendants suggest no additional limitations.

**(b)    Is any party seeking discovery of electronically stored information?**

_X_  Yes                        ___ No

**If "yes,"**

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

-18-

Discussions are ongoing regarding the precise scope of ESI. However, the parties have preliminarily agreed to the following:

A.        Electronically Stored Information

The parties have discussed the format, sources and scope of production relative to electronically store information ("ESI") and have agreed to the following preliminary stipulations in an effort to facilitate discovery of ESI.

1.      If ESI is a subject of discovery, it should be requested with as much specificity as possible to minimize the required expense.

2.       If advanced search methodologies become necessary, the parties agree to confer in attempt to reach agreement regarding the method of culling voluminous materials. The parties agree to cooperate in the development of a list of ESI search terms that will then be run against potentially relevant data sets to determine whether, or to what extent, the terms return a large number of "false hits." The parties further agree to confer about other search parameters including identifying relevant date limitations and specific custodian email accounts to be searched, to exclude irrelevant data.

3.      If the producing party claims that production of ESI would be an "undue burden," the producing party shall raise the issue with the party seeking production as soon as possible. Neither Party shall request reimbursement for the

location or production of ESI without first providing an estimate of those costs to the party seeking production and conferring about those costs.  If they cannot reach agreement, they shall jointly seek guidance from the Court.

4.      To enable bates-labeling and redaction, the parties agree that documents in general need not be produced in native format, except for Excel spreadsheets.  But, if Plaintiff proposes a need for the native format of a document or email, Defendant agrees to produce the individual native files in addition to the converted, labeled versions.  The parties will discuss the scope of any metadata production (e.g. which "fields" of metadata will be produced). If voluminous, production of ESI shall be provided on an electronic storage media (such as CD, DVD, portable hard drive, USB flash drive or other portable storage device).

In the event any limitations are requested for which the parties cannot reach an agreement, the parties shall request a conference with the Court.

B.      Privilege Claims

The parties agree that any responsive documents withheld or redacted on the basis of privilege or work-product protection will be listed on a privilege log including the following information:  identification of the sending and receiving parties; date; subject matter; and the basis of the privilege.  However, the parties agree to a categorical exclusion of communications between the parties and their

counsel of record on the basis of attorney-client privilege and/or attorney work-product, thereby releasing the parties of an obligation to enter those communications in a traditional privilege log.  The parties further agree to continue discussions of a more expansive categorical privilege log in the event a traditional privilege log would significantly delay production.  The parties do not anticipate any additional issues related to claims of privilege or of protection of attorney work-product other than those that may be addressed in the parties' anticipated protective order, which shall conform to the Court's standing order and include an appropriate clawback agreement and order pursuant to Federal Rule of Evidence 502 (d).  Should a dispute arise, the parties agree that they will confer in good faith before filing any motions related to claims of privilege.

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

The parties agree that production of electronically stored information be provided in Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native files subject to authentication. Parties also agree that

electronic files are preferred (disk or cloud-based services) to paper. Should a dispute arise, the parties agree that they will confer in good faith before filing any motions related to production of documents.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12.   <u>Other Orders</u>:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

The parties anticipate that other employees' employment records may be requested.  As a result, such discovery will raise various confidentiality issues. Thus, Defendant intends to request that the Court sign a reasonable Stipulated Protective Order whose language upon which the parties agree.

Additionally, the parties intend to request that the Court sign a reasonable Stipulated Rule 502 Protected Order.

**13.   <u>Settlement Potential</u>:**

**(a)     Lead counsel for the parties certify by their signatures below that they held a Rule 26(f) conference on <u>October 29, 2024</u>, and that they participated in subsequent settlement discussions, as required**

by LR 16.1.  Other persons who participated in the settlement
discussions are listed according to party.

**For Plaintiff:**       Lead Counsel:  Carla Aikens

**For Defendant:**    Lead Counsel:  Allison Whitfield

(b)     **All parties were promptly informed of all offers of
settlement and following discussion by all counsel, it appears that there
is now:**

_____A possibility of settlement before discovery.

\_X\_\_\_\_A possibility of settlement after discovery.

_____A possibility of settlement, but a conference with the Judge is
             needed.

_____No possibility of settlement.

(c)     Counsel (X) do (\_\_) do not intend to hold additional settlement
conferences among themselves prior to the close of discovery.  The
proposed date of the next settlement conference is unknown at this time.

(d)     **The following specific problems have created a hindrance to
settlement of this case:**

None known at this time.

**14.  <u>Trial By Magistrate Judge:</u>**

**Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

a.  The parties ( ) do consent to having this case tried before a Magistrate Judge of this Court.

b.  The parties (X) do not consent to having this case tried before a Magistrate Judge of this Court.

Completed form submitted this 14th day of November, 2024.

**Counsel for Plaintiff**

*/s/ Carla Aikens*
Carla D. Aikens (P69530)
Rejanae M. Thurman (P85701)
CARLA D. AIKENS, P.L.C.
Attorneys for Plaintiff
615 Griswold Suite 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com

**Counsel for Defendant**

*/s/Allison Whitfield*
Allison Whitfield
Georgia Bar No. 356119
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia  30334
(470) 866-5340
awhitfield@law.ga.gov

\* \* \* \* \* \* \*

## <u>SCHEDULING ORDER</u>

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery and discussing settlement are as stated in the above-completed form, except as herein modified.

_____

_____

_____

_____

_____

**IT IS SO ORDERED, this ___ day of _____, 2024.**

_____

United States District Judge